*In re* WINTER'S ESTATE.

WINTER *v.* WALKER.

1. EXECUTORS AND ADMINISTRATORS—DUTIES.
    It is the duty of an administrator of an estate to keep property insured, maintain upkeep, and pay administration expenses.

2. COURTS—PROBATE COURT—JURISDICTION—PARTIES.
    The probate court is a court of limited jurisdiction and while it has ample jurisdiction over estates and the administration thereof, it has no original jurisdiction of personal matter between widow of decedent and administrator in his individual capacity, where heirs at law and the estate, though parties in interest in the controversy, were not joined as parties.

3. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—RES JUDICATA—PARTIES.
    After accounting by the administrator of an estate had long since been filed and allowed, the accounting was *res judicata*

in so far as proceeding by decedent's widow was concerned, wherein she proceeded against the administrator individually claiming monthly payments due her under an agreement with the heirs should have been made before income was used for insurance, upkeep, maintenance of estate, and administration expenses where neither the heirs nor estate were made parties.

4. CONTRACTS—THIRD-PARTY BENEFICIARY STATUTE.

A promise is necessary to invoke the statute investing party for whose benefit a promise was made with the same right to enforce it that he would have had if the promise had been made directly to him as the promisee (Act No. 296, Pub. Acts 1937).

5. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—RELEASE—THIRD-PARTY BENEFICIARY CONTRACTS.

An agreement whereby an administrator waived his right to compensation as such in consideration of his release from further claims against him individually by the heirs or any one interested in the estate and specifically providing that the release was not to affect the matter of his accounting with reference to trust established for benefit of widow did not constitute a third-party beneficiary contract for benefit of widow within meaning of statute relating to such contracts (Act No. 296, Pub. Acts 1937).

6. APPEAL AND ERROR—REMAND—PREJUDICE—SUBSEQUENT PROCEEDINGS.

Upon reversal of cause in which not all parties in interest were before the court, remand for entry of judgment for defendant administrator is made without prejudice to widow's right to proceed against estate of decedent and the heirs for sums claimed to be due her pursuant to a trust agreement.

Appeal from Montcalm; Hawley (Royal A.), J. Submitted January 10, 1941. (Docket No. 74, Calendar No. 41,314.) Decided April 8, 1941.

In the matter of the estate of Thomas B. Winter, deceased. Anna E. Winter petitioned for citation of H. Irving Walker to show cause why he should not file an accounting of a trust created by agreement and why he should not pay plaintiff a sum of money. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Brake & Miel,* for plaintiff.

*J. A. Weitzel,* for defendant.

BOYLES, J. The decision in this matter rests mainly in the facts and circumstances, a detailed statement of which is necessary. In 1931, the defendant and appellant, H. Irving Walker, was administrator of the estate of Thomas B. Winter, deceased, then in course of probate in the probate court for Montcalm county. The heirs-at-law entered into an agreement with Anna E. Winter, widow of the deceased (plaintiff and appellee herein), which was designated as an "Agreement among heirs and authorization to administer," and filed with the court. The record does not show satisfactorily whether it was approved by the court, although the subsequent proceedings indicate its approval. Defendant does not appear as a party to the agreement and did not sign it as a party. However, it bears the following indorsement:

"I, H. Irving Walker, administrator of said estate, do hereby approve the foregoing agreement and believe it to be for the best interests of said estate in all respects.

"Dated May 18, 1931.
"H. IRVING WALKER
"Administrator of the estate."

This agreement provided in substance that, the heirs desiring to make suitable provision for the sustenance and comfort of the widow during her lifetime, she should receive $100 per month during her lifetime "payable from the said estate, by the administrator thereof, who is hereby so authorized."

It provided that the widow also was to have the life use of certain real estate as her domicile; the "estate" and the "administrator" were authorized and instructed to convey certain real estate, and other real estate was to be set aside by the administrator "as long as said estate continues in probate," and the income therefrom kept in a separate fund. This fund was to be used (1) to pay the widow the aforesaid $100 per month; and (2) for the upkeep of the buildings on the premises. The administrator was to keep a separate account as to this income fund. The heirs were to have the right to sell this real estate and reinvest the proceeds to provide said income fund. The administrator was directed to keep the property insured, the premiums, together with the upkeep and maintenance, to be paid out of the "income fund."

Defendant, as administrator, filed annual accounts of his administration in the probate court although he did not account separately for the "income fund." It was included in the general accounting. The gross income was not sufficient to pay the widow $100 per month and maintain the upkeep, repairs, insurance, and administration expenses. In 1937, the widow had coming a sum variously claimed to be around $1,000. From contradictory statements in the record and briefs, we gather that early in 1938 the administrator filed his resignation with the court, together with a final account. In it he accounted for his entire handling of the estate matters, including the administration of the separate property claimed to be set aside for the income fund from which the widow was to be paid. This account was heard by the probate court and, after some amendments were permitted, the account was allowed by the court as the final account of the administrator. The administrator's resignation was accepted, a suc-

cessor appointed and qualified to administer the estate, and defendant herein discharged. This apparently occurred sometime in May or June, 1938. At the time when the final account was heard and allowed, the defendant (administrator) signed the following statement which was filed with the court:

"In the Matter of the Estate of
Thomas B. Winter, Deceased.

"In consideration of the renouncement and waiver of any and all claims or alleged claims *against me as administrator of said estate, or personally by said estate, and/or the heirs thereof, and/or any person interested therein,* and upon the further consideration herein set forth, I do hereby expressly release any and all claim that I have or allege myself to have against said estate by way of services therefor as administrator thereof, and/or advances thereto, particularly hereby waiving claim for services and advances as set forth in my final account as administrator heretofore filed.

"And as further consideration for said release, I consent and agree that said final account shall be allowed as is, excepting that there shall be stricken therefrom any and all items of charges in my favor for services rendered as administrator, or advances made.

"That is to say, that said final account shall be allowed in full as the same was filed, excepting that in allowing said account, said court shall strike therefrom the items of charges by myself for services as administrator and advancements by me made.

"The filing of this release by me shall constitute and be and the same now is authority to said court to allow said account with said above-mentioned items and only said above-mentioned items stricken therefrom.

"This release is not intended to and does not in any way affect the matter of any accounting in connection with my obligations or services to or for

the trust of Mrs. Thomas B. (Anna) Winter, as determined under order of said court, dated June 25, 1931, in this proceeding.

"In witness whereof, I have hereunto set my hand and seal this 26th day of April, A. D. 1938.

"H. I. WALKER."

The matter thus stood until February, 1939, when Anna E. Winter, the widow, filed a rather unusual petition in the probate court. It purports to be a petition for citation of the defendant herein to show cause why he should not "file an accounting of the trust created by the agreement" hereinbefore referred to, and "why he should not pay this petitioner the sum of $1,145." The probate court entered an order to the effect that the balance due the widow was an obligation of the estate and not that of Mr. Walker, that he did not profit and had fully accounted for his administration and, therefore, Mrs. Winter could hold only the estate for the payment and must look to the estate. Plaintiff herein, Mrs. Winter, appealed this decision to the circuit court.

This appeal in the circuit court seems to have progressed on the theory that it was a bill for an accounting between the widow and the defendant individually, in which plaintiff asked for a "judgment" against the defendant for the amount plaintiff had not received from his administration of the estate. The defendant, at various stages of the proceedings in the circuit court, moved that the estate itself be made a party and that the succeeding administrator be joined, claiming that the estate and not he should be held liable. The circuit judge, at various times during the many continuances, stated that the estate should be brought in, but this was not done. The defendant finally filed an accounting in the circuit court, which was in substance and effect

practically the same as the account filed and allowed in the probate court. Defendant claimed he had fully accounted for his entire administration, including administration of the property from which the widow was to be paid $100 per month. At the conclusion of the proceedings in circuit court, a judgment was entered against the defendant, variously called an order, a judgment, and (as directed by the circuit judge) an "amended decree." In substance, it provided that the defendant owed the plaintiff $700.88 and ordered that the matter be certified back to the probate court for further proceedings to enforce and collect the same. From this, the defendant appeals.

The proceedings cannot be considered as an accounting of defendant's receipts and disbursements and general handling of his administration of the estate. Such an accounting had long since been filed and allowed and not appealed from. It is not claimed on behalf of plaintiff that defendant had not made a complete accounting of his administration, or that defendant had in any way withheld proceeds or profited personally from the administration. It is quite apparent that defendant had already accounted in probate court for the income from the separate property which was to be used in part to pay plaintiff the $100 per month. Plaintiff claims that she should have received these monthly payments *before* any of the income could be used for insurance, upkeep, maintenance, or administration expenses. Obviously this claim is based upon the agreement between the widow and the heirs-at-law, although neither the heirs-at-law nor the estate were made a party in the present suit. This can be considered only as an attempt to have the probate court take jurisdiction of a personal matter between the plaintiff herein and the defendant herein, not

in his capacity as administrator, but individually; and this, without joining the other parties in interest. It is the duty of an administrator to keep property insured, maintain upkeep, and pay administration expenses. The probate court is a court of limited jurisdiction. While it has ample jurisdiction over estates and the administration thereof, the probate court has no original jurisdiction such as is sought to be invoked in this proceeding. The plaintiff herein expressly refused to proceed against the estate or against the administrator as such.

If this record discloses any liability to plaintiff, it is a liability of the estate of Thomas B. Winter, with the probability that plaintiff herein might demand an accounting from both the estate and the other heirs-at-law. The estate is still pending in probate court and has sufficient funds from which to pay plaintiff the balance of the $100 per month agreed upon. Defendant herein has fully accounted; he owes no further liability to plaintiff. His accounting has become *res judicata* insofar as this proceeding is concerned and it cannot be attacked in a proceeding of this nature.

Plaintiff further claims that defendant is liable on the theory that the agreement between the other heirs-at-law and the widow was a "third-party beneficiary agreement" within the meaning of Act No. 296, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 14063-1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 26.1231 *et seq.*). Considerable confusion is evident in the record as to whether plaintiff intended to rely upon the original agreement made in 1931 (exhibit 1), or the statement signed by the defendant in 1938, waiving compensation, in closing his administration (exhibit 3). However, plaintiff's brief makes it plain that this claim is based upon exhibit 3, the statement signed by defendant April

26, 1938, hereinbefore quoted in full. That part of the same which plaintiff now relies upon as a "third-party beneficiary agreement" is as follows:

"This release is not intended to and does not in any way affect the matter of any accounting in connection with my obligations or services to or for the trust of Mrs. Thomas B. (Anna) Winter, as determined under order of said court, dated June 25, 1931, in this proceeding."

The pertinent provisions of Act No. 296, Pub. Acts 1937, upon which plaintiff relies are as follows:

"An act to establish the rights of a person other than a promisee for whose benefit a contract has been made. * * *

"SECTION 1. Any person for whose benefit a promise is made by way of contract, as hereinafter defined, shall have the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

"SEC. 2. A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or to refrain from doing something directly to or for said person."

. The obvious weakness of plaintiff's position is that the statement relied upon does not contain or imply a promise, and one is necessary to invoke the benefit of Act No. 296. Exhibit 3 neither purports to evidence a former obligation nor create a new one; neither can it be construed as a promise to pay an existing obligation of defendant, assuming there was one. On the contrary, the language in the first paragraph of the statement indicates an understanding that defendant was released from any further claims against him personally, by any of the heirs-at-law (of whom the widow was one), in considera-

tion of his waiving his compensation. At the most, the statement can be considered only as a mere acknowledgment that if Anna E. Winter had any proper right of accounting from the defendant (which he did not admit), the "release" should not affect that right. We conclude from the record that no such right existed as against the defendant, and certainly no such right was created by exhibit 3. It is more reasonable to consider that the reservation of plaintiff's rights, if any, was intended to protect her claim against the estate, rather than against Walker individually. It is generally conceded in the present proceeding that plaintiff has an existing right against the estate.

Judgment is reversed and the case remanded for entry of judgment for defendant, with costs, but without prejudice to further right, if any, of the plaintiff as against the estate of Thomas B. Winter, deceased, or his heirs-at-law.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.